1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

JENNIFER N. FORSHEY, D.M.D., M.D.,

11

Plaintiff,

CASE NO. C06-5335RJB

12

v.

13

SOMS, Inc., P.S., a Washington corporation;
ROBERT TODD ERICKSON, DDS, and
ANNE ERICKSON, and their marital
community,

14

15

16

Defendants.

ORDER (1) GRANTING IN
PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT ON
CONTRACT CLAIMS, (2)
GRANTING IN PART AND
DENYING IN PART
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT ON
COUNTERCLAIMS, AND (3)
GRANTING AND DENYING
EVIDENTIARY MOTIONS TO
STRIKE

17

18

19

SOMS, Inc., P.S., a Washington corporation;
ROBERT TODD ERICKSON, DDS, and
ANNE ERICKSON, and their marital
community,

20

21

22

Counter Claimants,

23

v.

24

JENNIFER N. FORSHEY, D.M.D., M.D.,

25

Counter Defendant.

26

This matter comes before the Court on the Plaintiff's Motion for Summary Judgment on

27

Contract Claims (Dkt. 92), the Plaintiff's Motion for Summary Judgment on Counterclaims (Dkt.

28

ORDER
Page 1

1  93), and the Evidentiary Motions to Strike contained in the reply (Dkt. 159). The Court has

2  considered the pleadings filed in support of and in opposition to the motions and the file herein.

3  ## I. FACTUAL AND PROCEDURAL BACKGROUND

4  Plaintiff Jennifer N. Forshey is an oral surgeon who was hired by SOMS, Inc. P.S.

5  ("SOMS") in March of 2004 under a one-year employment contract. Dkt. 94, Exh. A at 2. Dr.

6  Forshey's employment with SOMS was terminated on August 19, 2004. Dkt. 151 at 21. The

7  complaint alleges that the termination stemmed from Dr. Forshey's opposition to Dr. Erickson

8  permitting Michael Serrianne to administer anesthetics when he was in fact not licensed to do so.

9  Dkt. 1 at 5. Dr. Forshey alleges that her termination constitutes wrongful discharge in violation of

10  public policy and breach of employment contract. *Id.* at 7. Intermountain Employment Solutions,

11  Inc. was dismissed. *See* Dkt. 45.

12  Two motions for summary judgment are currently pending before the Court. Dkt. 92; Dkt.

13  93. The defendants filed a joint response to both motions. Dkt. 151. Therefore, the Court will

14  address both motions in this Order.

15  ## II. SUMMARY JUDGMENT STANDARD

16  Summary judgment is proper only if the pleadings, depositions, answers to interrogatories,

17  and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

18  to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

19  P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party

20  fails to make a sufficient showing on an essential element of a claim in the case on which the

21  nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

22  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a

23  rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*

24  *Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative

25  evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a

26  genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed

27  factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v.*

28  *Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

1   *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

2          The determination of the existence of a material fact is often a close question. The court

3   must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

4   e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec.*

5   *Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of

6   the nonmoving party only when the facts specifically attested by that party contradict facts

7   specifically attested by the moving party. The nonmoving party may not merely state that it will

8   discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

9   to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

10  Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be

11  presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

12                                      **III. DISCUSSION**

13         First, Dr. Forshey moves for summary judgment on her breach of contract claims. Dkt. 92.

14  Dr. Forshey contends that the defendants violated provisions of the Associate Agreement

15  governing written notice, termination, and compensation. Dkt. 92. Second, Dr. Forshey moves for

16  summary judgment on the defendants' counterclaims for breach of contract and tortious

17  interference with business expectations. Dkt. 93.

18  **A. BREACH OF CONTRACT**

19         Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), "federal courts sitting in

20  diversity jurisdiction apply state substantive law and federal procedural law." *Gasperini v. Center*

21  *for Humanities, Inc.*, 518 U.S. 415, 427 (1996). As the Washington Supreme Court has noted,

22  courts asked to enforce a contract may be called upon to either construct or interpret a contract's

23  terms. *Berg v. Hudesman*, 115 Wn.2d 657, 663 (1990). Contract construction requires the court

24  to determine the legal consequences that flow from a contract's terms. *Id*. at 663. Contract

25  construction is a purely legal question, and is therefore appropriate for resolution at the summary

26  judgment stage.

27         Contract interpretation requires the court to determine the meaning of a contract term and

28  the parties' intentions. *Id*. at 663. When interpreting a contract, the contract's ambiguous

ORDER
Page 3

1  language is construed against the party who drafted it or whose attorney prepared it. *See Guy*

2  *Stickney, Inc. v. Underwood*, 67 Wn.2d 824,827 (1966). The Court's review is generally limited

3  to the contract itself, and parol evidence or extrinsic evidence is not admissible to add to, subtract

4  from, vary, or contradict written contracts that are valid, complete, unambiguous, and not

5  affected by accident, fraud, or mistake. *Berg*, 115 Wn.2d at 670. Washington courts use the

6  "context rule" when interpreting contracts, whereby extrinsic evidence is admissible as to the

7  entire circumstances under which the contract was made, as an aid in ascertaining the parties'

8  intent." *Id*. at 667. Under the context rule, courts may consider parol evidence to interpret the

9  contract as it was written. *Id*. at 669.

10      Dr. Forshey contends that her termination was a breach of Paragraphs 13 ("Termination of

11  Employment") and 15 ("Notices") of the Associate Agreement and that she is owed a $6,295.29

12  bonus under Paragraph 4 ("Compensation) of the Associate Agreement. Dkt. 92 at 9-18.

13      **1. "Reasonable Notice" Requirement**

14      Dr. Forshey contends (1) that her termination was for failure to comply with policies and

15  not "for cause"; and (2) that the defendants therefore breached the Associate Agreement by failing

16  to provide her written notice before she was terminated. *See* Dkt. 92 at 20-21. The defendants

17  contend that Dr. Forshey was terminated "for cause" and that such termination does not require

18  written notice. Dkt. 151 at 25.

19      Paragraph 13 of the Associate Agreement between SOMS and Dr. Forshey governs

20  termination and requires notice for termination for failure to comply with policies:

21      The Employer shall have the right to terminate this Agreement and the Employee's
        employment hereunder at any time upon the occurrence of any one or more of the
22      following events: . . . (iv) if the Employee shall, after reasonable notice, continue to fail or
        refuse to comply with the policies, standards, or regulations of the Employer from time to
23      time established; . . . (viii) for cause . . . .

24  Dkt. 95, Exh. A at 7-8.

25      The Associate Agreement may also be terminated by either party upon notice given ninety

26  days before the end of the contract term. Dkt. 95, Exh. A at 2.

27      Dr. Forshey first contends that her termination cannot properly be characterized as "for

28  cause" because that provision of the contract should not be given legal effect and because her

ORDER
Page 4

1    termination did not satisfy the "just cause" standard under Washington law. Rather, Dr. Forshey

2    urges the Court to analyze her termination under the provision regarding violation of policies and

3    requiring reasonable notice.

4            Dr. Forshey contends that the "for cause" provision should not be given legal effect

5    because the specific, enumerated events justifying termination must be applied before the general

6    "for cause" term when interpreting the contract. Dkt. 92 at 19; *see Diamond B Constructors, Inc.*

7    *v. Granite Falls School Dist.*, 117 Wn. App.  157, 165 (2003) ("Where the contract provides a

8    general and a specific term, the specific controls over the general."). This rule applies only when

9    there is an ambiguity or conflict. *Graoch Associates No. 5 Ltd. Partnership v. Titan Const. Corp.*,

10   126 Wn. App. 856, 867 (2005). The Court is not persuaded that the provision allowing

11   termination for failure to comply with employer policies conflicts with the provision allowing "for

12   cause" terminations or creates an ambiguity. Dr. Forshey fails to persuade the Court that giving

13   effect to the "for cause" termination provision would render meaningless the specific and

14   enumerated justifications for termination.

15           Dr. Forshey next contends that her termination does not comport with the standards of

16   "just cause" under Washington law. The Associate Agreement does not define "cause."

17   Washington Courts have defined "just cause":

18           "[J]ust cause" is a fair and honest cause or reason, regulated by good faith on the part of
             the party exercising the power. We further hold a discharge for "just cause" is one which
19           is not for any arbitrary, capricious, or illegal reason and which is one based on facts (1)
             supported by substantial evidence and (2) reasonably believed by the employer to be true.

20   *Baldwin v. Sisters of Providence in Washington, Inc.*, 112 Wn.2d 127, 139 (1989). "Just cause"

21   and "for cause" are different legal standards, and "just cause" affords employees more rights. *See*

22   *Civil Service Com'n of City of Kelso v. City of Kelso*, 137 Wn.2d 166, 174-76 (1999). Dr.

23   Forshey offers no legal authority for applying the higher "just cause" standard to the "for cause"

24   provision in the Associate Agreement.

25           Finally, Dr. Forshey contends that the reason for her termination was failure to comply

26   with SOMS's policies, standards, and regulations. The defendants allege several justifications for

27   Dr. Forshey's termination, including the following: Dr. Forshey's behavior during the last weeks

28

ORDER
Page 5

1  of her employment (Dkt. 152-2, Exh. 2; Dkt. 156, Exh. 1); Dr. Forshey's breaking of "elevators"

2  used to extract teeth (Dkt. 152-4, Exh. 16 at 19, 24, 28; *see* Dkt. 152-5, Exh. 19 at 3); Dr.

3  Forshey's failure to document whether patients on anti-coagulation therapy had received recent

4  PT/INR tests (*See* Dkt. 152-2, Exh. 1 at 7-8; Dkt. 152-4, Exh. 16 at 26-27); Dr. Forshey's failure

5  to engage in marketing activities on her day off as promised (Dkt. 155 at 2); and downcoding

6  (undercharging) or giving away services (Dkt. 153 at 5). It is not clear whether these justifications

7  for Dr. Forshey's termination relate to "policies, standards or regulations of the Employer from

8  time to time established" and therefore fall under the contract provision requiring notice. Dkt. 95,

9  Exh. A at 7; *see also* Dkt. 151 at 14 (response admitting that no policy manual governed Dr.

10  Forshey's alleged behavioral issues); Dkt. 152-4, Exh. 16 at 26-27 (Dr. Erickson describing

11  PT/INR testing as "protocol"); Dkt. 153 at 5 (giving away care is not in compliance with the

12  procedures of the practice); Dkt. 95, Exh. A at 3 (paragraph 3.2 of the contract requires prior

13  written consent for the performance of surgery or dental services for the benefit of any other

14  person or entity); Dkt. 95, Exh. A at 3 (paragraph 3.3 of the contract governs the performance of

15  "administrative and marketing duties"); Dkt. 95, Exh. A at 6 (paragraph 12.1.1, a "restrictive

16  covenant," prohibits rendering services to any patients of the practice to or for the benefit of the

17  employee or any other person or entity). Because it is not yet clear whether Dr. Forshey's

18  termination was based upon violation of policies, standards, or regulations, the Court cannot yet

19  determine whether Dr. Forshey was entitled to "reasonable notice" prior to her termination. The

20  Plaintiff's Motion for Summary Judgment on Contract Claims should be denied in this respect.

21      **2. Bonus Compensation**

22      The Associate Agreement between SOMS and Dr. Forshey governs compensation:

23
24
25
26
27
    In consideration of and as full and total compensation for all services, the Employer shall pay to the Employee during the Term a base salary of One Hundred Fifty Thousand Dollars ($150,000.00) (the "Base Salary"). In addition to the Base Salary, the Employer shall pay the Employee additional compensation (the "Additional Compensation") at the end of each calendar year equal to twenty percent (20%) of all adjusted collections for the calendar year. During calendar year 2004, the $600,000.00 threshold will be prorated based on the actual number of weeks the Associate works for the Employer in 2004. Base Salary and Additional Compensation shall hereafter be collectively referred to as "Compensation."

28  Dkt. 95, Exh. A at 3. In 2004, Dr. Forshey worked 24.7 weeks. Dkt. 94 at 2. The collections

1  threshold, prorated to account for the number of weeks Dr. Forshey actually worked, is

2  $285,000. *Id.* Dr. Forshey's collections of $316,476.47 exceeded the prorated collections

3  threshold by $31,476.47. *Id*; Dkt. 107, Exh. N at 3. Dr. Forshey alleges that she is entitled to 20%

4  of this amount, or $6,295.29. Dkt. 92 at 9.

5        Dr. Forshey also contends that she is entitled to double damages for the withheld bonus

6  compensation. RCW 49.52.050(2) makes it a misdemeanor for an employer to "[w]ilfully and

7  with intent to deprive the employee of any part of his wages, [] pay any employee a lower wage

8  than the wage such employer is obligated to pay such employee by any statute, ordinance, or

9  contract." RCW 49.52.050(2). As a civil penalty for such a violation, employers are liable for

10  "twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages,

11  together with costs of suit and a reasonable sum for attorney's fees." under RCW 49.52.070. This

12  statute is construed liberally. *Flower v. T.R.A. Industries, Inc.*, 127 Wn. App. 13, 35 (2005), *rev.*

13  *denied*, 156 Wn.2d 1030 (2006). By providing for costs and attorney fees, this statute provides an

14  effective mechanism for recovery even where the wages wrongfully withheld may be small.

15  *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 159 (1998).

16        The critical determination in a case under RCW 49.52.070 for double damages is whether

17  the employer's failure to pay wages was "willful."  *Id.* There are two instances when an

18  employer's failure to pay wages is not deemed willful: (1) the employer's failure to pay was

19  careless or (2) there was a "bona fide" dispute between the employer and the employee regarding

20  the payment of wages. *Id.* at 160. The question of whether an employer acts "willfully" for

21  purposes of RCW 49.52.070 is a question of fact but may be decided as a matter of law if there is

22  no dispute as to the material facts. *Id.*

23        In this case, the response does not address Dr. Forshey's claim that her wages were

24  willfully withheld in violation of the Associate Agreement. Dr. Forshey's showing is sufficient,

25  and the wages at issue were earned before the termination. The defendants have therefore failed

26  to create a genuine issue of material fact. The Court should grant the Plaintiff's Motion for

27  Summary Judgment on Contract Claims as to the bonus compensation and double damages owed

28  to Dr. Forshey under the Associate Agreement.

ORDER
Page 7

1 **B. COUNTERCLAIMS**

2    Dr. Forshey also seeks summary judgment on the defendants' counterclaims for breach of

3 contract and tortious interference with business expectations. Dkt. 93. The basis for the

4 counterclaims is not clear from the defendants' answer. *See* Dkt. 7 at 8.

5    The plaintiff contends that summary judgment is proper on the counterclaims because the

6 defendants allege no damages to support their claims. *See* Dkt. 93 at 3-7. As support, the

7 defendants offer a letter itemizing only damages associated with alleged downcoding. *See* Dkt.

8 119, Exh. Z. This evidence suggests that the defendants have not definitively calculated all of the

9 damages associated with their counterclaims but fails to establish that there are no damages

10 associated with the counterclaims.

11    **1. Breach of Contract**

12    Dr. Forshey seeks summary judgment on several aspects of the defendants' breach of

13 contract counterclaim, showing that her failure to disclose a malpractice suit naming her as a

14 defendant and delay in acquiring a Washington General Anesthesia permit do not constitute

15 breaches of the Associate Agreement. Dr. Forshey demonstrates that there is no material issue of

16 fact surrounding these aspects of the defendants' breach of contract counterclaim. The defendants

17 fail to respond to this showing, and summary judgment is therefore appropriate on these aspects

18 of the defendants' breach of contract counterclaim.

19    Dr. Forshey also contends that her allegedly inadequate marketing and undercharging for

20 services do not constitute breaches of the employment contract. As to these aspects of the

21 defendants' breach of contract counterclaim, there are several material issues of fact that must be

22 resolved by the finder of fact at trial, including the true nature and extent of Dr. Forshey's

23 marketing effort and whether Dr. Forshey gave away care or undercharged for care in order to

24 benefit her employer or another entity. The Court should therefore deny the Motion for Summary

25 Judgment on Counterclaims in these respects.

26    **2. Tortious Interference**

27    Dr. Forshey also seeks summary judgment on the defendants' counterclaim for tortious

28 interference with business expectations. Dkt. 93 at 12. A claim of tortious interference with a

1   contractual relationship or business expectancy has five elements:

2   (1) the existence of a valid contractual relationship or business expectancy; (2) that
3   defendants had knowledge of that relationship; (3) an intentional interference inducing or
    causing a breach or termination of the relationship or expectancy; (4) that defendants
4   interfered for an improper purpose or used improper means; and (5) resultant damage.

5   *Pacific Northwest Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 351 (2006). Dr.

6   Forshey cites an excerpt of Defendant Anne Erickson's deposition alleging that referrals to SOMS

7   ceased after Dr. Forshey's termination and that Dr. Forshey was contacting dentists and asking

8   them to write letters on her behalf. *See* Dkt. 146, Exh. SS at 35-36. These vague allegations do

9   not create a genuine issue of material fact for trial. The defendants' response does not address this

10  portion of the Motion for Summary Judgment on Counterclaims, and the motion should therefore

11  be granted as to the defendants' counterclaim for  tortious interference with business

12  expectations.

    **C. DISCOVERY ISSUES**
13
            Dr. Forshey alleges that the defendants' discovery has been inadequate in several respects.
14
    *See, e.g.*, Dkt. 93 at 1-3, 10-12, 14-15. The deadlines for discovery and motions concerning
15
    discovery have passed, and the timeliness of the defendants' discovery responses is not properly
16
    before the Court. *See* Dkt. 73. While the plaintiff contends that dismissal or sanctions may be
17
    appropriate, the plaintiff has not moved for such relief. Furthermore, it does not appear that
18
    sanctions or dismissal is warranted.
19
    **D. MOTION TO STRIKE**
20
            The plaintiff moves to strike several portions of the record. As explained in more detail
21
    below, the Court should grant and deny the Evidentiary Motions to Strike (Dkt. 159) solely for
22
    purposes of deciding the pending Motions for Summary Judgment and without prejudice to the
23
    parties' use of the stricken evidence at trial. The Court has not considered the stricken materials in
24
    deciding the Motions for Summary Judgment.
25
            First, the plaintiff moves to strike Exhibit 29 to the Meade declaration as an unsworn
26
    opinion lacking foundation. Dkt. 159 at 10. Dr. Forshey contends that the Court should not
27
    consider this evidence expert testimony because it was compiled by Dr. Erickson, who has not
28

ORDER
Page 9

1   been identified as an expert. *Id.* Dr. Forshey further contends that this evidence constitutes

2   hearsay. *Id.* at 12. This document is a spreadsheet listing Dr. Erickson's notes as to the

3   inadequacy of Dr. Forshey's charts. *See* Dkt. 152-7, Exh. 29 at 26. To the extent that the

4   spreadsheet offers Dr. Erickson's opinions as to the sufficiency of the care provided, such opinion

5   evidence from a lay witness is inappropriate under Federal Rule of Evidence 701. Fed. R. Evid.

6   701(c) ("If the witness is not testifying as an expert, the witness' testimony in the form of

7   opinions or inferences is limited to those . . . not based on scientific, technical, or other specialized

8   knowledge . . . ."); Dkt. 158 at 2 (Dr. Erickson not disclosed as a witness). To the extent that the

9   spreadsheet merely summarizes the contents of patients' charts, the evidence is inadmissible

10  hearsay under Federal Rules of Evidence 802 and 801(c). The Motion to Strike should be granted

11  as to Exhibit 29.

12         Second, the plaintiff seeks to strike Exhibit 2 to the Meade declaration as conclusory and

13  inadmissible hearsay. Dkt. 159 at 10. This exhibit is a declaration from Molly (Genie) Morgan.

14  Dkt. 152-2, Exh. 2 at 24. Dr. Forshey seeks to strike statements regarding discussions with Ruth

15  Sheppard and Anne Erickson. Dkt. 159 at 10. The motion does not specify the specific statements

16  to be stricken, and the Court is therefore unable to determine whether such statements constitute

17  hearsay or whether an exception applies. The Motion to Strike should be denied as to Exhibit 2.

18         Third, the plaintiff moves to strike a statement from the Sweeten declaration, which is

19  Exhibit 5 to the Meade declaration, because the witness is not available for trial and cannot be

20  deposed, because the Ms. Sweeten's contact information was not supplied, and because the

21  statement is conclusory and lacks foundation. Dkt. 159 at 10; Dkt. 158 at 3. The offending

22  statement reads as follows: "On Thursday, August 19, again during the morning huddle with other

23  staff present, Dr. Forshey proceeded to become belligerent and extremely adversarial regarding

24  the decision to put her in the Tacoma office where she would get more referrals based on past

25  history." Dkt. 152-3, Exh. 5 at 2. The declaration does not specify whether Ms. Sweeten was

26  present at the morning huddle Thursday, August 19 or whether Ms. Sweeten viewed the allegedly

27  belligerent and adversarial behavior. The Motion to Strike should therefore be granted as to this

28  statement.

1   Fourth, the plaintiff moves to strike the last sentence of the Flint declaration as opinion

2 testimony because Jennifer Flint is not qualified as an expert and was not disclosed as an expert.

3 Dkt. 159 at 11. The statement is as follows: "It is my belief that her [Dr. Forshey's] detrimental

4 behavioral and unprofessional attributes outweighed her value to the practice and thus, her

5 employment with the practice evolved into a liability to its continued success." Dkt. 152-3, Exh. 8

6 at 11. In the preceding sentence, Jennifer Flint states that she is a "marketing professional." *Id.*

7 The Court is not persuaded that the success of a medical or dental practice is necessarily within

8 the realm of scientific, technical, or other specialized knowledge such that a lay witness is barred

9 from opining on the subject. The Motion to Strike should be denied in this respect.

10   Fifth, the plaintiff moves to strike certain lines of the Alexander deposition. Dkt. 159 at

11 11. Specifically, the plaintiff seeks to strike Jennifer Alexander's responses on page 181 as not

12 responsive to the question posted. *Id.* The plaintiff failed to object at the time of the deposition,

13 and the objection is therefore waived. *See* Fed. R. Civ. P. 32(d)(3) (Objection to the relevancy or

14 materiality of testimony is not waived for failure to object during the taking of a deposition unless

15 the ground of the objection is one that could have been addressed at the time.). The plaintiff also

16 seeks to strike statements on page 363 regarding how much time Dr. Forshey spent on drafting an

17 email as compared to time she spent marketing, contending that such statements are conclusory or

18 speculative. Dkt. 159 at 11. Jennifer Alexander's statement reflects her feelings and perceptions as

19 to Dr. Forshey's amount of time and should not be excluded as conclusory or speculative. *See*

20 Dkt. 152-3, Exh. 9 at 15 ("I felt that, and I specifically remember saying this to a colleague, that if

21 she had spent this much time marketing as she had writing this email, she wouldn't have needed

22 to."). Dr. Forshey also seeks to strike Jennifer Alexander's opinion as to whether Dr. Forshey's

23 professed marketing efforts lead to a typical or reasonable amount of business for the practice.

24 Dkt. 159 at 11. Such opinion testimony concerns specialized knowledge and is inappropriate from

25 a lay witness. *See* Fed. R. Evid. 702. Dr. Forshey's final objection to Jennifer Alexander's

26 deposition testimony is that certain pages lack foundation regarding relevant comparators and

27 contain irrelevant evidence in so far as they express an opinion as to whether Dr. Forshey received

28 adequate notice of termination. Dkt. 159 at 11. It is unclear to the Court which specific

ORDER
Page 11

1  statements Dr. Forshey seeks to strike on pages 380-381, and the Motion to Strike should

2  therefore be denied in this respect.

3        Sixth, Dr. Forshey moves to strike Exhibit 10 to the Meade declaration as lacking in

4  foundation and inadmissible hearsay. Exhibit 10 is apparently an email exchange between Jennifer

5  Alexander and Jennifer Flint. *See* Dkt. 152-3, Exh. 10 at 23. The foundation for this document is

6  unclear, and it should therefore be stricken.

7        Seventh, the plaintiff moves to strike portions of the deposition of Mario Parisio. When

8  asked whether he gave the defendants an opinion as to whether there was cause to terminate Dr.

9  Forshey, Mr. Parisio stated that he told the plaintiffs that he believed there was cause to terminate

10 Dr. Forshey. Dkt. 152-3, Exh. 13 at 38-39. This statement was a statement of fact as to what Mr.

11 Parisio said. While it contains an opinion, it need not be stricken under Federal Rule of Evidence

12 702.

13       Eighth, the plaintiff moves to strike portions of the Ornburn deposition in which Angela

14 Ornburn states that she would expect her employer to be upset with her if she were to use

15 profanity against her employer. Dkt. 159 at 11; *see* Dkt. 152-4, Exh. 14 at 7. This witness'

16 opinion as to how her employer, who is not a party to this case, might react if the witness were to

17 behave as Dr. Forshey allegedly behaved is not relevant and does not constitute proper lay witness

18 testimony. The Motion to Strike should be granted in this respect.

19       Ninth, the plaintiff moves to strike Exhibit 17 to the Meade declaration. Exhibit 17 is

20 apparently Dr. Erickson's notes of a conversation he had with Dr. Forshey on August 13, 2004.

21 *See* Dkt. 152-4, Exh. 17 at 33-34. This document is not signed. The document was apparently

22 authenticated at page 268 of Dr. Erickson's deposition. *See* Dkt. 152-4, Exh. 16 at 2 (Exhibit

23 list); Dkt. 152 at 4. To the extent that the document merely restates the conversation between Dr.

24 Erickson and Dr. Forshey, the document constitutes hearsay and should be stricken.

25       Tenth, the plaintiff moves to strike Exhibit 23 to the Meade declaration. Exhibit 23 is a list

26 of events that allegedly occurred on August 12, 2004. Dkt. 152-5, Exh. 23 at 11. The document is

27 not signed. The document was apparently authenticated at page 178 of Ms. Erickson's deposition.

28 *See* Dkt. 152-4, Exh. 18 at 2 (Exhibit list); Dkt. 152 at 5. This document should be stricken.

1    Eleventh, the plaintiff moves to strike Exhibit 24 to the Meade declaration as inadmissible

2  hearsay and as lacking in foundation. Dkt. 159 at 11. Exhibit 24 is a letter from Ruth Sheppard to

3  the Washington State Department of Employment Security stating that "the tensions in the office

4  where [sic] extremely stressful." Dkt. 152-5, Exh. 24 at 13. The defendants have not yet laid a

5  foundation for this statement, and the Motion to Strike should be granted in this respect.

6    Twelfth, the plaintiff moves to strike the expert report of Dr. Bierne as lacking a

7  foundation because there is no reference to the evidentiary standard of proof for medical opinions.

8  The plaintiff also contends that opinions expressed the expert report conflict with a subsequent

9  appellate case. Dkt. 159 at 12. These contentions speak to the credibility and persuasiveness, not

10  the admissibility, of the report. The Motion to Strike should be denied in this respect.

11    Thirteenth, the plaintiff moves to strike testimony of Kimberly Innocent as improper

12  character evidence under Federal Rule of Evidence 404. Dkt. 159 at 12. The plaintiff fails to

13  identify the specific statements she seeks to strike, and the Motion to Strike should therefore be

14  denied in respect.

15    Fourteenth, the plaintiff moves to strike Exhibit 1 to the Galusha declaration as hearsay.

16  Dkt. 159 at 12. The plaintiff fails to identify which portions of the exhibit constitute hearsay, and

17  the Motion to Strike should therefore be denied.

18    Finally, the plaintiff moves to strike Exhibit 1 to the declaration of Anne Erickson as

19  hearsay and lacking foundation. Dkt. 159 at 12. This exhibit consists of a memorandum written by

20  Janis Galusha. To the extent that the exhibit documents events that Ms. Galusha did not witness

21  and statements made by other parties, the Motion to Strike should be granted.

22

23

24                                         **IV. ORDER**

25    Therefore, it is hereby

26    **ORDERED** that the Plaintiff's Motion for Summary Judgment on Contract Claims (Dkt.

27  92) is **GRANTED** only as to the bonus compensation and double damages owed to Dr. Forshey

28  under the Associate Agreement and is otherwise **DENIED**; that Dr. Forshey is entitled to

1  judgment in the amount of $6,295.29; that the Plaintiff's Motion for Summary Judgment on

2  Counterclaims (Dkt. 93) is **GRANTED** as to the counterclaim for tortious interference with

3  business expectancies and **GRANTED in part** and **DENIED in part** as to the counterclaim for

4  breach of contract, as provided herein; and that the plaintiff's Evidentiary Motions to Strike

5  contained in the reply (Dkt. 159) are **GRANTED** and **DENIED** as provided herein.

6     The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel

7  of record and to any party appearing pro se at said party's last known address.

8     Dated this 24th  day of July, 2007.

9

10     Robert J Bryan
       United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER
Page 14